**BOSWELL GRAIN AND ELEVATOR, INC., Appellant,**

v.

**KENTLAND ELEVATOR AND SUPPLY, INC., Appellee.**

No. 04A03–9111–CV–337.

Court of Appeals of Indiana, Third District.

June 16, 1992.

John A. Larson, Williamsport, for appellant.

Stephen Bower, Cohen & Thrios, Merrillville, for appellee.

STATON, Judge.

Boswell Grain and Elevator, Inc. ("Boswell Grain") appeals a judgment in favor of Kentland Elevator and Supply, Inc. ("Kentland") in an action for specific performance of a real estate contract, raising two issues for our review:

I.   Whether the trial court erred in finding that the language of the contract was ambiguous.

II.  Whether the trial court properly applied the rules of contract construction in entering judgment for Kentland.

We affirm.

In substance, this appeal involves the contractual right to the ownership of certain machinery used in the operation of a grain elevator. The seeds of the dispute were germinated on October 2, 1984, when Kentland and Boswell Grain entered into a lease/purchase agreement whereby Kentland agreed to lease two grain elevators from Boswell Grain. In addition, Kentland was given an option to purchase the grain elevators, to be exercised within a specified time period. Within the proper time period, Kentland notified Boswell Grain of its intention to exercise its option to purchase the elevators and tendered the purchase price. However, Boswell Grain never tendered an executed deed to the property to Kentland. Consequently, Kentland sued for specific performance of the contract. Boswell Grain counterclaimed, alleging that Kentland wrongfully converted certain machinery and equipment stored on the property to its use during the term of the lease.

Following a bench trial, the trial court entered judgment in favor of Kentland on its complaint. In its judgment, the trial court found that the machinery and equipment in question on Boswell's counterclaim were included in the purchase option with the real estate and therefore properly passed to Kentland as part of the transac-

tion. Boswell Grain disputes this conclusion on appeal.

■ We first set out our standard of review. When a party has requested specific findings of fact under Ind. Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *transfer denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions of law entered on the findings. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *transfer denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■ This same standard of review applies when the trial court gratuitously enters specific findings of fact and conclusions of law, with one notable exception.[1] When the trial court enters such findings *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650, 652. We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id.*

---

1. The record does not contain a request for findings of fact.

2. Kentland argues that Boswell ·Grain waived this argument as it was not raised at trial. However, the record reveals that Boswell

# I.

## *Contractual Ambiguity*

■ Initially, Boswell Grain argues that the trial court erred when it concluded that the contract was ambiguous as to the meaning of the term "grain facilities".[2] The contract applies to two grain elevator operations—one in Boswell, Indiana and one in Chase, Indiana. This dispute concerns only the Chase grain elevators. The contract provides in relevant part:

1. Boswell Grain shall lease its Boswell Grain facilities to Kentland Elevator, as the same is more particularly described in Schedule A, attached hereto, together with Two (2) John Deere tractors, One (1) yellow Chevrolet pickup and office furniture and equipment located on such real estate....

2. *Agreement to Purchase Boswell Grain Facility.* Kentland Elevator also agrees to purchase from Boswell Grain the Boswell Grain facilities, equipment above described and office furniture and equipment along with the real estate described in Schedule A....

\*  \*  \*  \*  \*  \*

4. *Lease with Option to Purchase Chase Facility.* As part of the consideration of this Agreement, Kentland Elevator agrees to lease from Boswell Grain its grain facilities located at Chase, Indiana, for a period of Five (5) years....

\*  \*  \*  \*  \*  \*

(b) Boswell Grain agrees and does hereby grant to Kentland Elevator an option to purchase the Chase Grain facilities and the real estate upon which it is located as more fully described in Schedule B....

Record, p. 93.

■ In interpreting a contract, the courts seek to ascertain the intent of the parties and will accept an interpretation of the contract which harmonizes its provi-

---

Grain's counsel contended in his closing argument that the contract was unambiguous and its language supported Boswell Grain's position. Record, p. 360.

sions as opposed to one which causes the terms to be conflicting. *First Federal Sav. Bank v. Key Markets* (1990), Ind., 559 N.E.2d 600, 603. Normally, the intentions of the parties to a contract are to be determined by the "four corners" of the document. *Keithley's Auction Service v. Children of Jesse Wright* (1991), Ind.App., 579 N.E.2d 657, 659. However, if the intentions of the parties are not evident from the plain language of the contract, we must look elsewhere. *Id.* The test to determine whether there is an ambiguity in a contract is whether reasonable men would differ as to the meaning of its terms. *Id.* In determining whether the terms of a contract are ambiguous, we give words their usual and common meaning unless it is clear from the entire contract and its subject matter that another meaning was intended. *Whiteco Industries, Inc. v. Nickolick* (1991), Ind. App., 571 N.E.2d 1337, 1339–1340, *transfer denied.* If the ambiguity arises because of the language used in the contract and not because of extrinsic facts, its construction is purely a question of law to be resolved by the trial court. *Key Markets, supra,* at 604. On the other hand, if the contract is ambiguous and if the meaning of the contract is to be determined by extrinsic evidence, its construction is a matter for the factfinder. *Id.* An ambiguous contract will be construed against the party who drafted it. *Keithley's, supra,* at 659.

■ The dispute here concerns whether the term "grain facilities" includes equipment and machinery customarily used in the operation of a grain elevator. We agree with the trial court that there is nothing in the text of the contract which would shed light on the meaning of the term. Reasonable minds could differ as to whether it included the machinery and equipment used in the operation of the elevators. Therefore, the term is ambiguous and it was the trial court's task to resolve this ambiguity.

Boswell Grain cites a number of sources which define "facilities" broadly, conceding

that those definitions would support the trial court's judgment.[3] Appellant's Brief, p. 15. However, it argues that the meaning of the word was changed by its usage in the contract as a whole. Specifically, it points to the usage of the term in reference to the Boswell elevators: "Boswell Grain shall lease its Boswell Grain *facilities* to Kentland Elevator, as the same is more particularly described in Schedule A, attached hereto, together with Two (2) John Deere tractors, One (1) yellow Chevrolet pickup and office furniture and equipment located on such real estate...." Record, p. 93 (emphasis added). Boswell Grain argues that the use of the term "facilities" in addition to the additional qualifiers referring to the tractors, truck, office furniture, and "equipment" necessarily limits the term's scope. It contends that the machinery and elevator implements were included in the Boswell elevator lease and sale by virtue of the term "equipment," and the absence of the term in the Chase elevator sale indicates that there was no intention to include the machinery in the Chase sale. However, a close reading of this clause reveals that the trial court could reasonably have found that the word "equipment" was modified by the word "office." The language was not included in the Chase elevator clause because there was no "office equipment" at Chase—both operations were managed from the Boswell location. In determining whether the terms of a contract are ambiguous, we must give words their usual and common meaning unless it is clear from the entire contract and its subject matter that another meaning was intended. *Whiteco, supra.* We cannot agree with Boswell Grain that it is clear from the contract that another meaning of the word "facilities" was intended.

## II.

### *Construction of the Contract*

■ Boswell Grain argues that, assuming an ambiguity did exist, the trial court incorrectly applied the rules of construc-

---

**3.** *See, e.g.,* 35 C.J.S. *Facility* (1960) at p. 488, which defines facility as "a widely inclusive term, embracing everything which aids or

makes easier the performance of the activities involved in the business of a person or corporation."

tion. It first contends that the trial court erroneously construed the contract against Boswell Grain. It is a general rule that ambiguities in a contract are construed against the preparer. *Keithley's, supra,* at 659. However, Boswell Grain relies upon *Beck v. F.W. Woolworth Co.* (N.D.Iowa 1953), 111 F.Supp. 824, in which the court, applying Iowa law, stated that the general rule is inapplicable where the contract was prepared with the aid and approval of and under the scrutiny of counsel for each of the parties thereto. This exception has not heretofore been recognized in Indiana. In *Beck,* the contract was the result of a lengthy negotiation process in which multiple drafts of the contract were prepared. Counsel for one party prepared a draft of the contract and submitted it to counsel for the other party, who made numerous substantive changes in language, which were incorporated into the final contract. Here, while there was some negotiation of terms, Boswell Grain's counsel prepared the contract in his office and submitted it to Kentland, who signed it without making any changes in the language. Thus, the language in the contract was chosen by Boswell Grain. Our supreme court has stated:

> [I]t is a uniform rule of construction of contracts that: "Where a contract is ambiguous it will be construed most strongly against the party preparing it *or employing the words concerning which doubt arises,* the reason for the rule being that a man is responsible for ambiguities in his own expressions and has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt ... another thing more to his advantage." 17 C.J.S., Contracts, § 324, p. 751 and cases there cited.

*Smith v. Sparks Milling Co.* (1942), 219 Ind. 576, 39 N.E.2d 125, 135, *reh'g denied* (emphasis added). The trial court did not err in construing ambiguities in the contract against Boswell Grain.

■ Boswell Grain next argues that the trial court erred in finding that the conduct of the parties supported Kentland's construction of the contract. The trial court found (and Boswell Grain concedes) that no attempt was made to exercise control over the machinery and equipment in question during the term of the lease. However, Boswell Grain points to the evidence that it paid personal property taxes on the equipment and painted some of the grain dryers after the lease term ended. In light of the fact that both of these events occurred after the complaint was filed and after Boswell Grain asserted its counterclaim, we would not be surprised if the trial court did not attach great weight to this evidence.

■ Kentland's expert testified that it is customary to include the necessary machinery required to operate the grain elevators in a transaction for the sale of elevators. Although characterized by Boswell Grain as "portable," much of the machinery is large and is bolted to the ground or to the elevators. The record shows that Boswell Grain leased the Chase "grain facilities" to Kentland, and during the lease period did not make any claim to the machinery and equipment in question. Kentland used the machinery for the operation of the elevators under the lease. It then exercised its option to purchase the "grain facilities"—the same term used in the rental provision. The record supports the trial court's conclusion that the "grain facilities" purchased included the machinery and equipment used in the operation of the elevators during the rental period.

The trial court correctly applied the rules of contract construction and adopted a construction of the contract which harmonized its provisions and was consistent with the conduct of the parties under the contract. The trial court's judgment was not clearly erroneous.

Affirmed.

GARRARD and CHEZEM, JJ., concur.