April D. PLUMLEE, Travis Plumlee,
Appellants–Plaintiffs,

v.

MONROE GUARANTY INSURANCE CO.,
Charles R. Finnigan d/b/a Hueseman In-
surance Co. & Thomas E. Lewis, Appel-
lees–Defendants.

No. 29A05–9410–CV–00408.

Court of Appeals of Indiana.

Aug. 28, 1995.

Rehearing Denied Jan. 10, 1996.

Mark J. Dove, Rogers & Dove, North Vernon, for appellant.

Michael E. Brown, Jeffrey A. Doty, Kightlinger & Gray, Indianapolis, for appellees Charles R. Finnigan d/b/a Hueseman Ins. Co., and Thomas E. Lewis.

Julie L. Michaelis, Wooden McLaughlin & Sterner, Indianapolis, for appellee Monroe Guar. Ins. Co.

RUCKER, Judge.

Plaintiffs-appellants April and Travis Plumlee (the Plumlees) sued appellants-defendants Monroe Guaranty Insurance Company, ("Monroe"), Charles R. Finnigan d/b/a Hueseman Insurance Company, and Thomas E. Lewis (collectively "Hueseman") for breach of contract and negligence arising out of a dispute over an insurance policy. Monroe cross-claimed against Hueseman and thereafter all parties filed motions for summary judgment. The trial court granted summary judgment in favor of Monroe and Hueseman on the Plumlees' complaint and granted summary judgment in favor of Monroe on its cross-claim against Hueseman. Both the Plumlees and Hueseman appeal contending the trial court erred in its orders of summary judgment. We affirm in part and reverse in part.

On August 9, 1990, a 1971 Ford flatbed truck owned by Lawn Cure of Southeast Indiana, Inc., and driven by one of its employees struck April Plumlee, a pedestrian. April filed suit against Lawn Cure for injuries sustained in the collision and her husband Travis Plumlee joined as a plaintiff on a loss of consortium claim. The matter was settled by entry of an agreed judgment in the amount of $700,000.00. The parties' settlement agreement provided in part that Lawn Cure, through its insurer Farm Bureau Mutual Insurance Company, would pay policy limits to the Plumlees in the amount of $500,000.00. Also included in the agreement was a clause releasing Lawn Cure and all entities identified in interest with it from any future claims arising out of the accident. Further, Lawn Cure assigned to the Plumlees any claims it might have against Monroe Guaranty Insurance Company, Hueseman Insurance Company, and Thomas Lewis.

The assignment was based on the following facts. During the summer of 1989 Daniel

McConnell, president of Lawn Cure, and Thomas Lewis of the Hueseman Insurance Company, began discussions concerning Lawn Cure's insurance needs. At that time each of the vehicles owned by Lawn Cure was covered under an automobile liability policy and an umbrella policy with the Farm Bureau Insurance Company. Lewis originally filled out an application for automobile liability and umbrella coverage dated July 28, 1989, and forwarded the application to Monroe for a quotation. A second application was forwarded to Monroe on September 12, 1989. Both applications listed a 1977 Ford F–600 and a 1971 Ford truck. Monroe twice provided quotations to Hueseman, but because no action was taken within sixty days to procure policies of insurance, the quotations expired. Hueseman forwarded a third application to Monroe dated January 1, 1990. Although Lawn Cure apparently still owned both trucks at the time,[1] the only truck shown on the third application was identified as a "1977 Ford F–600 VIN/SERIAL NUMBER F35YLK47486." *Record* at 178. Lawn Cure's 1971 Ford bore that VIN/serial number, not the 1977 Ford listed on the policy. On May 2, 1990, Monroe issued to Lawn Cure two policies of insurance: a Business Auto Policy and a Commercial Umbrella Liability Policy. The auto policy provided coverage for "[o]nly those 'autos' described in ITEM THREE of the Declarations." *Record* at 127. The only Ford truck so described in the declarations was a "77 Ford F–600 Serial # 7486." *Record* at 125.

When the Plumlees attempted to recover from Monroe the $200,000.00 balance on the judgment it had received against Lawn Cure, Monroe advised them that the 1971 Ford flatbed truck involved in the collision was not covered under the policies of insurance. Armed with the assignment agreement, the Plumlees filed suit against Monroe and Hueseman alleging negligence and breach of contract. Monroe in turn, cross-claimed against Hueseman for indemnity. Thereafter all parties filed motions for summary judgment. After conducting a hearing the trial court granted summary judgment in favor of Monroe and Hueseman on the Plumlees' complaint and also granted summary judgment in favor of Monroe on its cross-claim against Hueseman. In so doing the trial court issued findings of fact and conclusions of law in support of its judgment. The Plumlees and Hueseman now appeal.

 We first recount the familiar rule. When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard applicable to the trial court. *Montgomery County Farm Bureau Coop. Assoc., Inc. v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, *reh'g denied.* We must consider the pleadings and evidence sanctioned by Ind.Trial Rule 56(C) without deciding their weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The movant bears the burden of proving the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed favorably to the non-movant. *Hawn v. Padgett* (1992), Ind.App., 598 N.E.2d 630. Also, specific findings entered by the trial court when ruling on motions for summary judgment afford the appellant an opportunity to address the merits of the trial court's rationale. *Fort Wayne Patrolman's Benevolent Ass'n, Inc. v. City of Fort Wayne* (1980), Ind.App., 408 N.E.2d 1295, *reh'g denied,* 411 N.E.2d 630. The specific findings and conclusions also aid our review by providing us with a statement of reasons for the trial court's actions. However, they have no other effect. *P.M.S., Inc. v. Jakubowski* (1992), Ind.App., 585 N.E.2d 1380, 1381 n. 1. Thus we note the Plumlees' concern over the trial court's alleged inconsistent findings and conclusions. We base our decision however on the Rule 56 materials before us.

## THE PLUMLEES' COMPLAINT AGAINST MONROE

### I.

The Plumlees first contend the trial court erred in entering summary judgment in fa-

---

1. The affidavit of Daniel McConnell submitted as a part of the Plumlees' Rule 56(C) materials shows that in January 1990, the 1977 Ford F–600 was leased to a third party and in December 1990, title to the truck was transferred.

vor of Monroe on their breach of contract claim. According to the Plumlees the Vehicle Identification Number shown on the schedule should control the determination of what vehicle is actually covered under the Business Auto policy. Continuing their argument the Plumlees maintain that the policy should therefore be read as insuring a "1971" Ford truck rather than a "1977" Ford truck.

 Contracts for insurance are subject to the same rules of interpretation and construction as are other contracts. *Eli Lilly and Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467; *Sharp v. Indiana Union Mut. Ins. Co.* (1988), Ind.App., 526 N.E.2d 237, *trans. denied.* Whenever summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Kutche Chevrolet, Inc. v. Anderson Banking Co.* (1992), Ind.App., 597 N.E.2d 1307. Generally, construction of a written contract is a question of law for the trial court and therefore summary judgment is particularly appropriate. *Id.* However, if reasonable minds differ as to the meaning of the contract's terms, then an ambiguity exists rendering summary judgment inappropriate. *Id.* This is so because a fact finder would have to weigh the evidence to ascertain facts necessary to construe the contract. Such an exercise is contrary to summary disposition where the material facts generally are not in dispute and the movant is entitled to judgment as a matter of law. In the case before us the description of the vehicle as a "77 Ford F-600 Serial # 7486" is susceptible to more than one meaning and is therefore ambiguous. On the one hand the policy of insurance could be interpreted as covering a truck with serial number F35YLK47486. In this case the truck is a 1971 Ford. On the other hand the policy could be interpreted as covering only a 1977 Ford regardless of the serial number. There is no dispute that Lawn Cure never owned a 1977 Ford truck bearing that particular serial number. Indeed it is unlikely that any Ford truck manufactured in 1977 bore the number F35YLK47486. Obviously the description

represents an error combining the unique serial number of one truck with the model year of another. While we reject the Plumlees' position that as a matter of law the serial number should control the determination of what vehicle is actually covered under the Business Auto policy, we do conclude there is an ambiguity here which can only be resolved by making a factual determination concerning whether the parties to the contract intended to insure a 1977 Ford F-600 or a 1971 Ford truck bearing serial number 7486. That factual determination can only be made by weighing and examining evidence extrinsic to the four corners of the policy itself. Where ambiguity in a written contract can only be determined by extrinsic evidence, summary judgment is inappropriate. *Kutche*, 597 N.E.2d at 1309.

In its *Brief of Appellee*, Monroe does not directly address the question of ambiguity. Rather, it contends the trial court's grant of summary judgment can be sustained on alternative theories. *See Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593, *trans. denied.* (The trial court's ruling on a motion for summary judgment may be affirmed on any theory supported by the evidence of record.) In particular, Monroe asserts summary judgment can be affirmed on the grounds of (1) there is no evidence the parties intended the policy of insurance cover a 1971 truck, (2) an endorsement removing the Ford from the list of scheduled vehicles, and (3) Monroe's right to reform the policy. We address each assertion in turn.

### Intent of the parties

According to Monroe there is an absence of any evidence supporting the proposition that either Lawn Cure or Monroe intended the 1971 Ford to be covered under the Monroe Auto Policy. In support of its position Monroe directs our attention to portions of the deposition of Daniel E. McConnell, Lawn Cure's president, in which it may reasonably be inferred that McConnell intended that Monroe cover the 1971 Ford truck only after the Farm Bureau policy insuring the truck had expired. The record is clear that the Farm Bureau policy on the truck was still in effect at the time of the collision.

We first observe that Monroe's argument on this point is actually a version of the ambiguity issue. Specifically, intentions of the parties to a contract are usually determined by examining the four corners of the document. *Boswell Grain and Elevator, Inc. v. Kentland Elevator and Supply, Inc.* (1992), Ind.App., 593 N.E.2d 1224. However, if the intentions of the parties are not evident because of ambiguity in the contract language, then the court must utilize other means to determine intent. *Id.* As we have already indicated, and as Monroe apparently recognizes by its reference to deposition testimony, the ambiguity here can only be determined by extrinsic evidence. Summary judgment is therefore inappropriate and cannot be sustained on the grounds that the parties did not intend the policy of insurance to cover the 1971 Ford truck. *See Kutche,* 597 N.E.2d at 1309.

■ Second, we do not agree with Monroe's assertion that the evidence before the trial court and thus before this court is undisputed on the question of Lawn Cure's intent. At the very least the Rule 56(C) materials reveal conflicting inferences from the undisputed facts. For example, the evidence is undisputed that at the time Daniel McConnell was discussing Lawn Cure's insurance needs with Hueseman, all of the vehicles owned by Lawn Cure were covered under an automobile liability policy and an umbrella policy with the Farm Bureau Insurance Company. The policies had been procured by McConnell's father who is now deceased. In his deposition, McConnell testified that he told Hueseman that he "wanted to make sure that the policies that I was going to be switching over would be exactly like what I had gotten from [McConnell's father], because I knew and trusted that those were ones that he had established for me. And, so, I wanted to get the same coverage." *Record* at 816. Because the 1971 Ford flatbed truck was covered under the Farm Bureau policy of insurance, a fact finder could reasonably infer that Lawn Cure intended that any policy of insurance through Monroe would also include that truck. The law is settled that summary judgment is inappropriate if conflicting inferences arise, even if the facts are not in dispute. *J.A.W.*

*v. Roberts* (1994), Ind.App., 627 N.E.2d 802. For this additional reason summary judgment cannot be sustained in this case on the theory that the parties never intended to insure the 1971 Ford.

### The Endorsement

■ The record shows on August 15, 1990, six days after April Plumlee had been injured in the collision giving rise to this action, Monroe received from Hueseman a handwritten note which said in relevant part, "Please delete veh # 1—77 Ford as far back as possible—It was sold in March." *Record* at 528. In response Monroe issued an endorsement removing the vehicle from coverage under the policy effective April 1, 1990 and returned a ratable portion of the premiums paid to that date. Based on these facts Monroe argues that it makes no difference whether the description in the policy is construed to refer to a 1977 Ford F–600, or a 1971 Ford. According to Monroe, whatever vehicle was intended to be described could not be considered a scheduled automobile on the date of the accident. We disagree.

The Business Auto Policy issued by Monroe to Lawn Cure had a policy period extending from February 20, 1990 to February 20, 1991. If the parties intended that the policy cover the 1971 truck, then it is axiomatic the truck was covered on April 9, 1990, the day of the collision. That the endorsement was issued back-dating the coverage to a date before the collision is of no effect. The removal of the truck from coverage was essentially a cancellation of insurance before the end of the policy period. However, by the express terms of the insurance policy Monroe could only cancel the policy by mailing or sending notice of cancellation either (1) "10 days before the effective date of cancellation if [the cancellation was due to] nonpayment of premium," or (2) "30 days before the effective date of cancellation if [the cancellation was due to] any other reason." *Record* at 123. There is no indication in the record that Monroe notified Lawn Cure that it intended to cancel coverage with respect to the truck. In any event the cancellation could not have been effective prior to the date of the collision. The trial court's grant of sum-

mary judgment cannot be affirmed on this ground.

### Reformation

 Closely related to Monroe's argument that the trial court's grant of summary judgment can be affirmed on the basis of the endorsement, Monroe also contends the judgment can be affirmed on the basis of reformation. In Indiana equity has jurisdiction to reform written documents in only two well-defined situations: (1) where there is a mutual mistake—that is, where there has been a meeting of the minds, an agreement actually entered into, but the document in its written form does not express what the parties actually intended, or (2) where there has been a mistake by one party, accompanied by fraud or inequitable conduct by the remaining party. *Pearson v. Winfield* (1974), 160 Ind.App. 613, 313 N.E.2d 95. "There can be no rectification, however, unless it is proved that both parties were mistaken in the use of the terms to be corrected, and that both parties agreed to the contract sought to be substituted for that to be set aside." *Pearson,* 313 N.E.2d at 98–99 quoting *Citizens Nat'l Bank v. Judy* (1896), 146 Ind. 322, 43 N.E. 259.

 Although not entirely clear, Monroe seems to suggest that it is entitled to reformation because the policy of insurance was entered into based upon a mutual mistake, namely a scrivener's error in the description of the vehicle to be covered. *See Essex Group, Inc. v. Nill* (1989), Ind.App., 543 N.E.2d 393, *reh'g denied* (Mistake by a scrivener will permit reformation of an instrument if both parties were mistaken as to the actual contents of the instrument.) First, it is not apparent that a mutual mistake exists. Monroe clearly intended to insure the vehicle listed in the application for insurance, a 1977 Ford F–600 serial number 7486. On the other hand Lawn Cure could not have so intended because it owned no such vehicle. In any event assuming for the sake of argument that there was a mutual mistake, Monroe nonetheless is not entitled to reformation because there is no meeting of the minds as to the term to be substituted for that to be set aside. *See Pearson,* 313 N.E.2d at 98–99. Stated differently the parties to the contract,

namely Monroe and Lawn Cure, clearly do not agree whether the insurance policy covers a 1977 Ford F–600 or a 1971 Ford flatbed truck. Absent an agreement reformation is not possible. The primary purpose of reformation is to effectuate the common intentions of the parties to the instrument which were incorrectly reduced to writing. *Id.* at 99. To "reform" a contract in favor of one party contrary to the intent of the other party amounts to little more than the court rewriting the contract which it clearly may not do. *Bell v. New York Life Ins. Co.* (1963), 134 Ind.App. 614, 190 N.E.2d 432 (Courts can only enforce the terms of an insurance contract as agreed upon by the parties and have no authority to make a new or different contract.) Accordingly, Monroe cannot prevail on its motion for summary judgment based on reformation.

For all the reasons discussed above the trial court erred in granting summary judgment in favor of Monroe on the Plumlees' complaint for breach of contract. The judgment of the trial court on this issue must be reversed.

### II.

The Plumlees next contend the trial court erred in granting summary judgment in favor of Monroe on their complaint for negligence. At oral argument the Plumlees conceded that Monroe was not independently negligent. Rather, according to the Plumlees, Hueseman was acting as an agent of Monroe, Hueseman was negligent in failing to provide insurance coverage as requested, and Hueseman's negligence must be imputed to Monroe. In granting summary judgment in favor of Hueseman, the trial court did not decide the question of Hueseman's alleged negligence. Rather, the trial court determined that if Hueseman were negligent, then its negligent acts could not be imputed to Monroe because Hueseman was acting as an agent of Lawn Cure.

 The record discloses that Hueseman is licensed with approximately fifty companies, only one of which is Monroe. Also the agreement between Monroe and Hueseman specifically recognizes that Hueseman is

an independent contractor. Generally, an agent who operates an independent insurance agency representing several insurers, is considered a broker. *Stockberger v. Meridian Mut. Ins. Co.* (1979), 182 Ind.App. 566, 395 N.E.2d 1272. In such a situation, the broker is normally deemed to be an agent of the buyer, not the insurer, and the insurer is not liable for the broker's tortious conduct. *Id.* When, however, the "broker makes application for insurance and the insurance policy is issued, the broker is the agent of the insurer and can bind it within the scope of his authority." *Callis v. State Auto. Ins. Co.* (1991), Ind.App., 579 N.E.2d 129, 131, *trans. denied* quoting *Aetna Ins. Co. v. Rodriguez* (1988), Ind., 517 N.E.2d 386, 388, *reh'g denied.* Here Hueseman made application for insurance and Monroe issued a policy. Therefore Hueseman is deemed the agent of Monroe and not Lawn Cure. The trial court's determination to the contrary is erroneous.

■■■■ However, trial court error notwithstanding the Plumlees still cannot prevail on this issue. The tort liability of the principal expressed in the doctrine of respondeat superior, that is, the negligence of the agent is imputed to the principal, is based not upon the agency relationship, but upon the master-servant relationship. *Green v. Perry* (1990), Ind.App., 549 N.E.2d 385, *trans. denied.* There is no respondeat superior liability for principals whose non-servant agents commit tortious acts. *Id.* citing *Burkett v. Crulo Trucking Co., Inc.* (1976), 171 Ind.App. 166, 355 N.E.2d 253.

■■■ In order for the Plumlees to prevail on their claim that the alleged negligent conduct of Hueseman should be imputed to Monroe, they must demonstrate a master-servant relationship, whether that be employer-employee, or principal-agent. *Green,* 549 N.E.2d at 389. There is no free-standing theory of relief based upon an agency relationship. *Id.* The Plumlees have not carried their burden. To the contrary the Rule 56(C) materials clearly show that Hueseman is an independent contractor over whom Monroe has little or no control. The trial court properly granted summary judgment

in favor of Monroe on the Plumlees' complaint for negligence.

## THE PLUMLEES' COMPLAINT AGAINST HUESEMAN

In granting summary judgment in favor of Hueseman the trial court relied on the release of claims in the settlement agreement which provides in relevant part:

> April D. Plumlee and Travis Plumlee hereby release and forever discharge Lawn Cure of Southeast Indiana, Inc., William J. McKee, and United Farm Bureau Mutual Insurance Company and all other person[s] and entities identified in interest with them from all present and future claims which April D. Plumlee may have or claim to have, arising out of the accident of August 8, 1990....

*Record* at 844. The trial court determined: "As assignees of Lawn Cure, the Plumlees have no greater rights against [Hueseman] than Lawn Cure had at the time of the assignment." *Record* at 601–02. According to the Plumlees the trial court erred in granting summary judgment to Hueseman because (1) Hueseman waived the defense of "release" by not asserting it as an affirmative defense in its answer to the Plumlees' complaint, and (2) even if waiver does not apply the terms of the assignment show that Lawn Cure is released from liability only upon certain pre-conditions, some of which have not yet ripened.

■■■■ We agree the trial court erred in granting summary judgment on the grounds of the release, but for reasons different from those raised by the Plumlees. There is no question that as assignees of Lawn Cure the Plumlees have no greater rights against Hueseman than would Lawn Cure itself. *See Methodist Hosp. of Indiana, Inc. v. Town & Country Mut. Ins. Co.* (1964), 136 Ind.App. 184, 197 N.E.2d 773, *reh'g denied,* 136 Ind. App. 184, 198 N.E.2d 873. However, we fail to discern how the Plumlees' release of claims against Lawn Cure, its employee William McKee, its insurer Farm Bureau, and "all other person[s] and entities identified in interest with them," can serve to benefit Hueseman. Hueseman was not a party to the release, nor does Hueseman argue that it

is identified in interest with any party to the release. Certainly the release would not prohibit Lawn Cure from pursuing an action against Hueseman for alleged negligence in failing to procure insurance. In like fashion the assignment afforded the Plumlees the same right. Accordingly the trial court erred in granting summary judgment in favor of Hueseman on the grounds of the assignment and its judgment must be reversed.[2]

## MONROE'S CROSS–CLAIM AGAINST HUESEMAN

In its cross-appeal Hueseman complains the trial court erred in granting summary judgment in favor of Monroe on Monroe's cross-complaint for indemnity. Hueseman argues that rather than granting summary judgment in Monroe's favor, the trial court should have dismissed Monroe's claim as moot once it determined that Monroe was entitled to summary judgment in favor of the Plumlees. Hueseman also contends that disputed issues of material fact exist which preclude summary disposition.

In support of its mootness position, Hueseman points out that Monroe's cross-claim for indemnity was conditional. Specifically, Monroe's complaint alleged in relevant part:

> Although Monroe denies that it is liable to plaintiffs, *in the event it is held liable* and a judgment in plaintiffs' favor is obtained against it, Monroe is entitled to indemnity for any amounts expended in satisfaction of the judgment, as well as, reasonable attorney's fees and court costs.

*Record* at 65 (emphasis added). According to Hueseman, once the trial court entered summary judgment in favor of Monroe and against the Plumlees, the trial court lost jurisdiction to enter any further order because Monroe could no longer be held liable. Hueseman cites no authority for this proposition and our own research reveals none. "An issue becomes moot when it is no longer live or when the parties lack a legally cognizable interest in the outcome." *Colum-*

*bus Bd. of Zoning Appeals v. Wetherald* (1992), Ind.App., 605 N.E.2d 208, 210, *trans. denied.* When the principal questions in issue have ceased to be matters of real controversy between the parties, the errors assigned become moot questions and the court will not retain jurisdiction to decide them. *In re Marriage of Stariha* (1987), Ind.App., 509 N.E.2d 1117, 1123. In this case the question of indemnity clearly remains a matter of real controversy between Monroe and Hueseman. That the trial court determined Monroe was not liable to the Plumlees and thus automatically rendering Hueseman not liable to Monroe on the cross-claim, does not mean the matter is no longer live. Indeed in its alternative argument Hueseman strongly urges that Monroe is not entitled to indemnity. Because this court must still address the issue, by definition the question of indemnity is not moot. *See Id.* at 1122 ("It is standard practice in this state to *dismiss an appeal* when it becomes unnecessary to decide the question presented.") (emphasis added). We decline to dismiss this appeal.

Hueseman next contends the trial court erred in any event by granting summary judgment in Monroe's favor because disputed issues of material fact still remain. Arguing there are no Indiana cases on point, and citing cases from foreign jurisdictions, Hueseman maintains that an insurer is not entitled to indemnity from its agents where the insurer is willing to provide the subject coverage, and that the insurer has the burden of proving that it would not have issued the policy absent the agent's negligence. According to Hueseman, the trial court made no determination as to whether Monroe was willing to issue the policy on the 1971 Ford, absent any alleged negligence on Hueseman's part. Further, according to Hueseman, there is no evidence of record indicating an unwillingness by Monroe to cover the subject vehicle.

 In support of its motion for summary judgment Monroe designated, among other things, a document entitled "Agency–

---

**2.** While we acknowledge that the trial court's ruling on a motion for summary judgment may be affirmed on any theory supported by evidence of record, *Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593, 596 *trans. denied,* the record here is devoid of evidence concerning any alternative theory upon which the trial court's judgment may be affirmed.

Company Agreement." The document provides in pertinent part:

## XI. INDEMNIFICATION

\* \* \*

b. The Agent [Hueseman] shall indemnify and save harmless the Company [Monroe] against any loss, cost or expense (including reasonable attorneys' fees and court costs) arising out of or in connection with any claims or liabilities the company may become obligated to pay to, for, or on behalf of any insured based upon actual or alleged error of the Agent in processing or handling of any business placed or to be placed by the Agent with the Company, except to the extent the Company has caused, contributed or compounded such error.

*Record* at 69. Hueseman's reliance on authority from foreign jurisdictions notwithstanding, the law in this jurisdiction is well settled. Indemnification agreements are contracts and are governed by the law of contracts. *Kruse Classic Auction Co., Inc. v. Aetna Cas. & Sur. Co.* (1987), Ind.App., 511 N.E.2d 326, *trans. denied; Bell v. Commonwealth Land Title Ins. Co., Inc.* (1986), Ind. App., 494 N.E.2d 997, *trans. denied; State v. Daily Express, Inc.* (1984), Ind.App., 465 N.E.2d 764. As indicated elsewhere in this opinion, generally construction of a written contract is a question of law for the trial court and therefore summary judgment is particularly appropriate. *Kutche Chevrolet, Inc. v. Anderson Banking Co.* (1992), Ind. App., 597 N.E.2d 1307; *McCae Management Corp. v. Merchants National Bank and Trust Co.* (1990), Ind.App., 553 N.E.2d 884, *trans. denied.* Only where reasonable persons could find the contract susceptible of more than one construction, and the meaning of the contract thus must be determined by extrinsic evidence, does the existing ambiguity make summary judgment inappropriate. *Id.* Whenever summary judgment is granted based upon the construction of a written agreement, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or the contract ambiguity, if one exists, can be resolved without the aid of a factual determination.

*Kutche,* 597 N.E.2d at 1309; *Midwestern Indem. Co. v. Leffler Const. Co., Inc.* (1984), Ind.App., 463 N.E.2d 1130.

▮ In this case Hueseman does not contend the agreement is ambiguous and our own examination reveals no ambiguity. Rather the agreement is clear and unambiguous. Thus Hueseman's argument that facts extrinsic to the document are in dispute thereby precluding summary disposition is not well taken. Where the terms of a contract are clear and unambiguous, the terms are conclusive and this court will not construe the contract or look at extrinsic evidence; rather we will merely apply the contractual provisions. *Jackson v. DeFabis* (1990), Ind.App., 553 N.E.2d 1212. Although for purposes of summary judgment disputed factual questions may preclude or defeat liability of the indemnity claimant to the party actually injured, such dispute will not prevent the court from disposing of the indemnity claim. *Coca–Cola Bottling Co. v. Vendo Co.* (1983), Ind.App., 455 N.E.2d 370.

▮ The undisputed facts in this case show that Lawn Cure sought a policy of insurance from Hueseman, that Hueseman submitted an application to Monroe requesting coverage on Lawn Cure's behalf for a 1977 Ford F–600 VIN F35YLK47486, and that Monroe issued a policy based on the application submitted. As previously discussed Lawn Cure owned no such vehicle and an error obviously occurred. If a factfinder determines that the Plumlees are entitled to recover from Monroe, then under the clear terms of the Agency–Company Agreement, Monroe is entitled to indemnity against Hueseman. The trial court properly granted summary judgment in Monroe's favor.

## CONCLUSION

We reverse the trial court's grant of summary judgment in favor of Monroe against the Plumlees on their breach of contract claim. We also reverse the trial court's grant of summary judgment in favor of Hueseman against the Plumlees on their

negligence claim. In all other respects the judgment of the trial court is affirmed.

Affirmed in part and reversed in part.

BARTEAU and HOFFMAN, JJ., concur.