**WESTFIELD INSURANCE COMPANY, Appellant– Plaintiff,**

v.

**YASTE, ZENT & RYE AGENCY, Appellee–Defendant.**

No. 43A03–0306–CV–239.

Court of Appeals of Indiana.

April 7, 2004.

**26**

Rebecca Hoyt Fischer, Lewis C. Laderer, Laderer & Fischer, P.C., South Bend, IN, Attorneys for Appellant.

Michael K. Lulich, Michael K. Lulich & Associates, Danville, IN, Attorney for Appellee.

**OPINION**

KIRSCH, Chief Judge.

Westfield Insurance Company ("Westfield") appeals the trial court's order granting summary judgment in favor of Yaste, Zent & Rye Agency ("Agency") on Westfield's complaint for damages, which alleged that Agency was negligent and made fraudulent misrepresentations to it. Westfield raises three issues, which we consolidate and restate as:

I.  Whether the trial court correctly granted summary judgment in Agency's favor on Westfield's negligence claim because as a matter of law Agency did not owe any duty to Westfield.

II. Whether Agency established that as a matter of law it was entitled to judgment on Westfield's fraudulent misrepresentation claim.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Beginning in the early 1980's, the Robinson family's insurance agent was Don Stoneburner, who assisted the Robinsons with obtaining both personal and business insurance. In 1989, Stoneburner began working at Agency.

In October 1989, Westfield and Agency entered into an Agency Agreement ("Agreement") that authorized Agency to write insurance for Westfield. The Agreement identified Agency as "an independent contractor, not an employee" of Westfield. *Appellant's Appendix* at 274. In the Agreement, Westfield agreed to indemnify and hold Agency harmless from and against liability for damage arising out of any error or omission committed by Westfield. *Id.* at 277. There was no mutual provision under which Agency agreed to indemnify Westfield.

In 1997, the Robinson family contacted Stoneburner about obtaining insurance for Cheryl Robinson's business, Rovan, Inc., which restored and repaired recreational vehicles. Pursuant to an application submitted by Agency, Westfield issued a commercial liability policy to Rovan. Initially, no vehicles were covered under the policy. However, in order to obtain lower cost automobile insurance for Cheryl's then-teenage son, Brandon Robinson, Stoneburner suggested to the Robinsons that Brandon lease his 1995 Chevy pickup truck to Rovan, the named insured under the Westfield policy. Stoneburner provided the lease to the Robinsons, and Brandon executed it. The lease required that Rovan provide Brandon with insurance for times that he drove the 1995 Chevy pickup truck. Therefore, Agency submitted a request to Westfield seeking coverage for Brandon's Chevy pickup, now leased to Rovan, and coverage for Brandon as a driver under the Rovan policy, indicating that he would

use his pickup to drive vehicle parts and supplies for Rovan. Westfield added an insured-lessor endorsement to cover Brandon as a driver.

In March 1998, Brandon sold the 1995 Chevy pickup and purchased a 1998 Ford Mustang GT. Brandon executed another written lease, with the same terms as the 1995 Chevy pickup truck lease. Agency notified Westfield, asking it to delete the Chevy pickup truck and replace it with the Mustang GT. Westfield issued an amended policy declaration that exchanged the vehicles; however, it also deleted the lessor-insured endorsement. Agency did not detect this deletion, and, consequently, did not advise Rovan that Brandon was no longer covered under the policy.

On June 8, 1998, Brandon again traded vehicles, selling the Mustang and replacing it with a 1997 Dodge pickup truck. On that day, Rovan and Brandon agreed to an oral lease with the same terms as the prior leases. Also on that day, Cheryl Robinson notified Agency of this new lease and made a request to replace the Mustang GT with the Dodge pickup truck. On June 15, 1998, Agency submitted, at Rovan's direction, a request to Westfield asking it to substitute the Dodge pickup for the Mustang GT. Several days prior, on June 12, 1998, Brandon, while operating his motor vehicle, had been involved in a collision that left three minors dead and two others seriously injured.

In November 1998, Westfield sought declaratory judgment that the policy issued to Rovan did not provide coverage for Brandon at the time of the accident. The trial court entered summary judgment in favor of Rovan, finding that coverage existed. On appeal, this court agreed. *Westfield Cos. v. Rovan, Inc.*, 722 N.E.2d 851, 861 (Ind.Ct.App.2000) ("*Westfield I*"). Specifically, we determined that the deletion of the lessor-insured endorsement was

a cancellation for which Westfield failed to give adequate notice to Rovan. *Id.*

Westfield tendered its $2,000,000 policy limits to the injured parties. It then commenced this lawsuit in March 2000 by filing an amended complaint against Agency for damages, alleging *inter alia* that Agency owed it duties to exercise due care, skill and diligence, to deal honestly in placing insurance with Westfield, and to inspect the amended policy declaration, which deleted the lessor-insured endorsement, to determine whether that declaration reflected the requested coverage. Westfield also alleged that "in devising this plan to provide low cost coverage to Brandon," Agency fraudulently misrepresented facts to Westfield. *Appellant's Appendix* at 209, 211. As a consequence, Westfield alleges it suffered damages; i.e., it was held liable for coverage in the amount of $2,000,000 for Brandon's accident.

Agency filed a motion for summary judgment, which the trial court granted on May 21, 2003 following a hearing earlier that month. The trial court's order stated in pertinent part:

**THE COURT NOW FINDS:**

1. That the Court has subject matter jurisdiction, as well as personal jurisdiction over the parties.

2. That there are no issues of material fact and the questions presented are purely questions of law for the Court to determine.

3. That the Defendant, Yaste, Zent & Rye Agency, Inc., was an insurance broker and as such was the agent of Rovan, Inc. (formerly one of the Defendants in this cause).

4. That the Defendant, Yaste, Zent & Rye Agency, Inc., was not the agent of the Plaintiff, Westfield Insurance Co. at the time or times the actions complained of by the Plaintiff occurred.

5. That the Defendant, Yaste, Zent & Rye Agency, Inc., breached no duty owing, if any, to the Plaintiff, Westfield Insurance Co., whether created by contract, common law, or in some fiduciary capacity.

### ORDER

**IT IS THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED** by the Court that judgment be and it is hereby granted in favor of the Defendant, Yaste, Zent & Rye Agency, Inc.

*Appellant's Appendix* at 16–17. Westfield now appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

■ Westfield asserts that the trial court erred in granting summary judgment in favor of Agency. Summary judgment is the appropriate method for terminating a cause of action that presents no genuine issue of material fact and which may be determined as a matter of law. *Westfield I*, 722 N.E.2d at 854–55. On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment should be granted only if the designated evidence shows there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350, 353 (Ind. Ct.App.1995), *trans. denied* (1996). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Plumlee*, 655 N.E.2d at 353.

#### II. Negligence

■ Westfield asserts that Agency had a duty to act honestly and with due dili-

gence toward Westfield and that Agency breached that duty when, in requesting coverage for each of Brandon's three vehicles, Agency failed to fully disclose the circumstances under which coverage was requested, i.e., to obtain coverage for Brandon's personal use of his vehicles. Westfield further asserts that Agency had a duty to inspect the amended policy declaration it received from Westfield to determine whether it accurately reflected the Agency's request to delete and/or add a vehicle and that it breached that duty when it failed to recognize that the additional insured-lessor endorsement had been dropped from the policy. As a result of those breaches, Westfield claims that it suffered damages, namely liability for $2,000,000 in coverage stemming from Brandon's accident, and it seeks damages in that amount, plus prejudgment interest.[1] Agency responds that, as an independent agency or broker, its duties flowed only to its insured, Rovan, and not to Westfield; therefore, as a matter of law it cannot be liable to Westfield, and summary judgment was proper. Whether a duty exists is a question of law for the

court. *See DeHayes Group v. Pretzels, Inc.,* 786 N.E.2d 779, 782 (Ind.Ct.App. 2003), *trans. denied.*

■ As a preliminary matter, we find it appropriate to underscore the posture of this case, as that affects our analysis and, ultimately, our conclusion. We do not have here an insured suing either the insurance agency or the insurance company, or both of them, for benefits.[2] If we did, it would be appropriate for us to examine agency law and determine whether, at the point in time that it sought to make changes to the policy, Agency owed duties to its insured, Rovan, or to Westfield. Rather, in this case, we have the insurer suing its licensed broker[3] to recover monies paid to the insured pursuant to a policy obtained through the broker. We must determine what duty, if any, the broker owed to the insurer when that broker requested changes in coverage to an already existing policy. Accordingly, the inquiry is not whether, from an insured's standpoint, the broker possessed the apparent authority of an agent or could bind the insurer to coverage. Instead, we are concerned with whether, *as between the*

---

1. Agency suggests that Westfield's complaint seeks reimbursement for monies paid and "smacks" of a suit for indemnity, *Appellee's Brief* at 18, *Appellant's Appendix* at 29, and because the Agreement does not require Agency to indemnify Westfield, Westfield cannot recover. *See Plumlee,* 655 N.E.2d at 359 (indemnification agreements are contracts); *Rotec, Div. Of Orbitron, Inc. v. Murray Equip., Inc.,* 626 N.E.2d 533, 535 (Ind.Ct.App.1993) (right of indemnification generally arises by contract or statutory obligation). Westfield maintains, however, that it is seeking damages for negligence and fraudulent misrepresentation, not indemnification. *Cf. Plumlee,* 655 N.E.2d at 359 (after injured pedestrian sued insurer and independent insurance agency, insurer cross-claimed against independent insurance agency for indemnity pursuant to provision in agency agreement, which provided that independent agent agreed to indemnify insurer for any claims

the insurer may be required to pay to any insured based upon error of the independent agent).

2. As explained above, Westfield initially filed a declaratory judgment action, and this court affirmed the trial court's determination that benefits were payable to Rovan under the policy. *Westfield,* 722 N.E.2d at 859.

3. Agency sold insurance products for various companies, including Westfield. As a general matter, an insurance agent who represents several insurers is a broker. *Plumlee,* 655 N.E.2d at 357. Indeed, Westfield's amended complaint for damages against Agency states, "The Agency is an independent insurance agency which acts as a broker to obtain insurance from a number of different insurance companies for its clients." *Appellant's Appendix* at 208.

*insurer and the broker,* there was any duty of due diligence, skill, or honesty that obligated the broker to disclose information it possessed about the insured.

Here, the relationship between Westfield and Agency is defined by their Agreement. The Agreement authorizes Agency to solicit applications, bind coverage, and collect premiums, but it does not otherwise impose any duty upon Agency with respect to disclosure of information regarding an insured. Nor does it require Agency to act honestly or with due diligence. It expressly describes Agency as an "independent contractor" and not an employee of Westfield. *Appellant's Appendix* at 274.

Westfield asserts that the relationship is not defined solely by the Agreement and maintains that the parties' course of dealing is relevant to determining whether Agency owed it any duty. We disagree. Again, we are determining in this appeal the scope and definition of the relationship between Westfield and Agency, not from the vantage point of a proposed insured's expectations, but rather by examining what responsibilities and obligations Agency agreed with Westfield to undertake.

The Agreement is Westfield's contract. In its offer to Agency, Westfield could have proposed imposing duties upon Agency, including a duty on the part of Agency to indemnify it. Agency would then have been free to accept or reject such terms. Westfield did not do so. Instead, it chose to contract with Agency as a broker, rather than employ it as its agent. Now that Westfield has been found liable for payment of insurance benefits, it cannot attempt to reconfigure the relationship; i.e.,

it cannot claim that Agency was its agent and owed it duties, the breach of which would require Agency to reimburse Westfield for insurance proceeds paid to an insured. Simply stated, Westfield cannot have it both ways, namely employ Agency as a broker, but impose duties on the premise that Agency was an agent.

We note the troubling nature of the allegations surrounding the manner in which Agency sought and obtained coverage for Brandon and his vehicles; however, we find, as did the trial court, that as a matter of law Agency did not owe any duty to Westfield, and thus Agency is entitled to summary judgment on Westfield's negligence claims.

## II. Fraudulent Misrepresentation

▆ Westfield asserts that Agency fraudulently misrepresented facts to it when it sought coverage for the 1995 Chevy pickup truck, the 1998 Mustang GT, and the 1997 Dodge pickup truck. Indiana law recognizes two forms of fraud, actual fraud and constructive fraud.[4] The elements of actual fraud are:

1. a material misrepresentation of past or existing fact by the party to be charged which
2. was false,
3. was made with knowledge or in reckless ignorance of the falsity,
4. was relied upon by the complaining party, and
5. proximately caused the complaining party injury.

*Darst v. Illinois Farmers Ins. Co.,* 716 N.E.2d 579, 581 (Ind.Ct.App.1999), *trans. denied* (2000). The elements of constructive fraud are:

---

4. We note that negligent misrepresentation is not applicable in the context of this case. *Jim Barna Log Sys. Midwest, Inc. v. General Cas. Ins. Co. of Wisconsin,* 791 N.E.2d 816, 830 (Ind.Ct.App.2003), *trans. denied* (negligent misrepresentation recognized only in limited context of employer-employee relationships); *Darst,* 716 N.E.2d at 584 (Indiana does not recognize negligent misrepresentation in insurance context).

1. a duty owing by the party to be charged to the complaining party due to their relationship,

2. violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists,

3. reliance thereon by the complaining party,

4. injury to the complaining party as a proximate result thereof, and

5. the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Id.* In order to establish either tort, the complaining party must have had a reasonable right to rely upon the statements made or omitted. *Id.* at 582.

 Westfield does not identify under which theory of fraud it seeks recovery. To the extent it claims that, when requesting coverage, Agency failed to disclose facts that would have affected Westfield's decision to insure the vehicles and Brandon, Westfield asserts that Agency omitted relevant facts. Premised upon an omission, that claim constitutes a claim of constructive fraud, which requires a duty. Because we have already determined that Agency did not owe any duty to Westfield, Agency's claim of fraudulent misrepresentation based on omission of facts fails as a matter of law. Therefore, the trial court's grant of summary judgment in favor of Agency was appropriate as to this aspect of Westfield's fraudulent misrepresentation claim.

 However, to the extent that Westfield alleges Agency affirmatively misrepresented past or existing fact, for instance that the purpose of the subject vehicles, or any of them, was to transport vehicle parts for Rovan, Westfield's claim is one for actual fraud. This type of fraud is not dependent on a duty and is not foreclosed by the absence of a duty flowing from Agency to Westfield. Because Agency has not established that as a matter of law it did not commit actual fraud, summary judgment was inappropriate on this aspect of Westfield's fraudulent misrepresentation claim. Therefore, we reverse summary judgment as to Westfield's fraudulent misrepresentation claim as it pertains to actual fraud and remand to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and BARNES, J., concur.