**WESTFIELD COMPANIES,**
Appellant–Plaintiff,

v.

**ROVAN, INC., Brandon J. Robinson, Terry Barley and Tracy Trout, Individually and as Natural Parents and Guardians of Tiffany Bartley, a Minor, and Tyler Bartley, a Deceased Minor Child, Donald Hatfield, Individually and as Parent of Aaron Hatfield, a Deceased Minor Child, and as Personal Representative of the Estate of Aaron Hatfield, Yolanda Lavon Kuda, Mother of Aaron Hatfield, Monte L. Florey, Individually and as Parent of Heather A. Florey, a Deceased Minor Child and as Personal Representative of the Estate of Heather A. Florey, Pamela A. Hiers, Mother of Heather A. Florey, and Monica Hatfield, By Her Guardian, Pamela A. Hiers, and Yaste, Zent & Rye Agency, Inc., Appellees–Defendants.**

No. 43A03–9903–CV–112.

Court of Appeals of Indiana.

Jan. 20, 2000.

Bruce A. MacTavish, Pardieck, Gill, Vargo & MacTavish, Seymour, Indiana, Michael L. Valentine, Valentine & Miner, Warsaw, Indiana, for Donald Hatfield.

Thomas D. Blackburn, Blackburn & Green, Fort Wayne, Indiana, for Tracy Trout.

## OPINION

MATTINGLY, Judge

On June 12, 1998, while operating his 1997 Dodge pickup truck in Warsaw, Indiana, Brandon Robinson ("Robinson") was involved in a motor vehicle collision that left three minors dead and two others seriously injured. At issue is whether Robinson was covered under a commercial insurance policy issued by Westfield Companies ("Westfield") to his mother's company Rovan, Inc. ("Rovan") at the time of the accident.

Westfield sought declaratory judgment that the policy in question did not provide coverage for Robinson at the time of the accident. After entertaining cross-motions for summary judgment, the trial court entered judgment in favor of Rovan. Westfield appeals and asks we either grant summary judgment in its favor or reverse, as genuine issues of material fact exist making summary judgment for Rovan inappropriate. It presents seven issues for our review that we consolidate and restate as:

1. Whether the trial court erred by finding Robinson to be covered under the commercial insurance policy issued by Westfield to Rovan; and

2. Whether there exist genuine issues of material fact.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Rovan is an incorporated business engaged in the repair and renovation of automobiles and recreational vehicles. Cheryl Robinson is the president of Rovan and Robinson is her son. On March 22, 1997,

Rebecca Hoyt Fischer, Laderer & Fischer, South Bend, Indiana, for Appellant.

W. Douglas Lemon, Millard P. Plumlee, III, Lemon, Armey, Hearn & Leininger, Warsaw, Indiana, for Monte L. Florey.

Westfield issued a Commercial Package (the "Policy") to Rovan pursuant to an application submitted by Rovan's insurance agency, Yaste, Zent & Rye Agency, Inc. (the "Agency"). The Policy included, among other things, commercial auto coverage. Initially no vehicles were identified in connection with the Policy. The original policy period ran from March 22, 1997 to March 22, 1998 and was renewed for the period March 22, 1998 to March 22, 1999.

On January 26, 1998, Rovan, by Cheryl Robinson, entered into a written lease agreement with Robinson whereby Rovan leased from Robinson a 1995 Chevy pickup truck. As part of that agreement, Rovan was required to provide direct primary insurance for Robinson for times when Robinson drove the 1995 Chevy. Therefore, pursuant to the lease. Cheryl Robinson notified the Agency of the agreement between Rovan and Robinson, forwarded it a copy of the lease, and requested coverage for Robinson under the Policy. Westfield issued an Amended Common Policy Declaration to the Policy adding the 1995 Chevy as a specifically described auto, effective January 23, 1998. Additionally, Form CA2001 7/97 entitled "Additional Insured—Lessor" was added as an endorsement (the "Lessor Endorsement") to the Policy. This Lessor Endorsement was intended to provide coverage for Robinson as an additional insured under the Policy when driving a vehicle he owned but had leased to Rovan.

In March 1998, with Rovan's consent, Robinson sold the 1995 Chevy and purchased a 1998 Ford Mustang GT. Rovan and Robinson executed another written lease agreement whereby the Mustang was leased to Rovan under the same operative terms and conditions as the previous lease of the 1995 Chevy. Cheryl Robinson notified the Agency of the replacement and requested the 1995 Chevy be deleted from the Policy and the Mustang be added. She did not send the Agency a copy of the new lease. The Agency notified Westfield of the requested change and on April 20, 1998, effective retroactively to March 22, 1998, Westfield issued another Amended Common Policy Declaration that deleted the 1995 Chevy and added the Mustang. That amendment also deleted the Lessor Endorsement. This amendment to the Policy was sent by Westfield in duplicate to the Agency with the understanding a copy would then be forwarded to Rovan.

On June 8, 1998 (three days before the accident), again with Rovan's consent, Robinson sold his Mustang and purchased a 1997 Dodge pickup truck. Rovan and Robinson orally agreed that the 1997 Dodge would replace the leased 1998 Mustang under the same terms and conditions as the two prior written lease agreements. As had been the case with the prior lease agreements, Rovan was again required to provide direct primary liability insurance for Robinson as the lessor. That same day, Cheryl Robinson notified the Agency of the change and requested the Mustang be replaced with the Dodge truck under the Policy. On June 15, 1998 (two days after the accident), pursuant to Rovan's request, the Agency asked Westfield to replace the 1998 Mustang with the 1997 Dodge retroactive to June 8, 1998.

Westfield filed its complaint for declaratory judgment on November 3, 1998 seeking a judgment that the policy in question did not provide coverage for Robinson at the time of the accident. Westfield moved for summary judgment on December 11, 1998. On February 12, 1999, Rovan filed a Joint Cross Motion for Summary Judgment. The trial court entered its order granting Rovan's motion for summary judgment and denying Westfield's motion on March 10, 1999. This appeal followed.

## DISCUSSION AND DECISION

### A. Coverage Under The Policy

■ The trial court granted summary judgment in favor of Rovan after finding Robinson covered under the Policy despite the deletion of the Lessor Endorsement prior to the June 12, 1998 accident. Summary judgment is the appropriate method

for terminating a cause of action that presents no genuine issue of material fact and which may be determined as a matter of law. Ind. Trial Rule 56(C); *Taylor v. Duke,* 713 N.E.2d 877, 880 (Ind.Ct.App. 1999).[1]

■ This case involves the interpretation of an insurance contract. Such cases are particularly appropriate for summary judgment as the interpretation of a contract is a matter of law. *Marlatt v. United Farm Bureau Family Life Ins. Co.,* 640 N.E.2d 1073, 1076 (Ind.Ct.App.1994). We "consider all of the provisions of the contract to ascertain its meaning, not just individual words, phrases, or paragraphs, and must accept a construction which harmonizes the provisions rather than one which supports a conflicting version of the provisions." *Anderson v. State Farm Mut. Auto. Ins. Co.,* 471 N.E.2d 1170, 1172 (Ind.Ct.App.1984).

At issue on appeal is the coverage provided by the Lessor Endorsement included in the Policy at the request of Rovan for the benefit of Robinson.[2] Though this endorsement was deleted prior to the accident, Rovan maintains Westfield cannot now deny coverage. It argues the endorsement would have covered Robinson had it not been deleted and that the deletion was a cancellation of coverage for which Westfield failed to provide notice as required under the Policy. We agree.

### 1. *Lessor Endorsement Coverage*

■ Westfield argues the Lessor Endorsement issued to Rovan effective January 23, 1998 was specific to the 1995 Chevy and once that truck was sold and Rovan asked for it to be deleted from the policy, "the Lessor Endorsement was automatically deleted from the Westfield Policy as well." (Br. of Appellant at 13.) Rovan, however, argues the 1997 Dodge was a replacement auto subject to a lease[3] between Rovan and Robinson and would have been covered under the express language of the Lessor Endorsement had it not been deleted from the Policy.

■ As mentioned above, this dispute requires us to interpret the Policy, specifically the Lessor Endorsement. When interpreting an insurance policy we give plain and ordinary meaning to language that is clear and unambiguous. *Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.,* 698

---

1. The fact that cross-motions for summary judgment on the same issues were made does not alter this standard. *Walling v. Appel Serv. Co., Inc.,* 641 N.E.2d 647, 649 (Ind.Ct.App. 1994). "We must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials Inc.,* 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996).

2. The parties agree the only source of coverage for Robinson while operating a vehicle he owned but had leased to Rovan would be an endorsement for leased autos as the Policy specifically excludes him as an "insured."

Under the Auto Coverage part of the Policy, Rovan was provided liability coverage for "accidents" arising from the operation of covered "autos" by "insureds." Section II(A) of the "Garage Coverage Form" under the "Auto Coverage" part states:

"GARAGE OPERATIONS"—COVERED "AUTOS"

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos."

(R. at 68.) Section II(A)(1) of the Garage Coverage Form describes an insured as:
1. **Who Is An Insured**
a. The following are "insureds" for covered "autos:"
(1) You for any covered "auto."
(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow *except*:
(a) The owner or anyone else from whom you hire or borrow a covered "auto."
(R. at 69) (emphasis added.)

3. Westfield maintains the existence of a lease between Robinson and Rovan for the 1997 Dodge is an issue of fact in dispute. This issue is discussed *infra* Part B. For purposes of determining whether, as a matter of law, the Policy would have covered Robinson at the time of the accident had it not been deleted we assume a valid lease to have existed.

N.E.2d 770, 773 (Ind.1998). Policy language is unambiguous if reasonable persons could not honestly differ as to its meaning. *Id.* To this end, we look to see "if policy language is susceptible to more than one interpretation." *Id.* If an insurance policy contains ambiguous provisions, they are construed in favor of the insured. *Id.* "This strict construal against the insurer is driven by the fact that 'the insurer drafts the policy and foists its terms upon the customer. The insurance companies write the policies; we buy their forms or we do not buy insurance." *Id.*

The Lessor Endorsement provides coverage to a lessor for "any 'leased auto' described in the Schedule."[4] (R. at 81.) The coverage extends "until the expiration date shown in the Schedule, or when the lessor ... takes possession of the 'leased auto', whichever occurs first." (R. at 81.) The term "leased auto" is defined by the Lessor Endorsement as "an 'auto' leased or rented to you, including any substitute, replacement or extra 'auto' needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor." (R. at 81.)

Westfield contends that the Lessor Endorsement is vehicle specific and that, for Robinson to be covered under the Policy, Rovan must have requested it be added to the Policy. It argues:

Westfield would not automatically issue a Lessor Endorsement with respect to a new vehicle. If Rovan wanted a Lessor Endorsement with respect to the new vehicle [the 1998 Mustang], the Agency had to specifically ask for it, or provide Westfield with documentation, such as the lease provided with the 1995 Chevy

pickup truck, that made it clear that a Lessor Endorsement was appropriate. (Br. of Appellant at 16.) Westfield's argument that the Lessor Endorsement was vehicle specific is not based on any language in either the endorsement or the Policy. Rather, it is based upon a difference in circumstances between the request of coverage for the 1995 Chevy and that for the 1998 Mustang. When Rovan first requested the Lessor Endorsement in connection with the 1995 Chevy, Rovan provided a copy of the lease between it and Robinson, provided a statement of the purpose for the lease, and identified Robinson as the lessor. The request for coverage of the 1998 Mustang did not contain this information. Instead, all Rovan asked was that the 1995 Chevy be deleted and the 1998 Mustang be added. Westfield maintains that had Rovan wanted the Lessor Endorsement with the 1998 Mustang, it should have provided the same information as was provided with the 1995 Chevy.

Westfield points out that it "is not a mind reader" and that Rovan could have purchased the vehicle for Robinson's use rather than having Robinson purchase it for Rovan's use. (Br. of Appellant at 15.) The problem with Westfield's argument is that nothing in the Lessor Endorsement or the Policy expresses the requirement that an insured provide Westfield a copy of the lease or a statement of the purpose for requesting the Lessor Endorsement. Westfield cannot escape the language of the policy it drafted. The Lessor Endorsement states that it covers "[*a*]*ny* 'leased auto' designated or described in the Schedule." (R. at 81) (emphasis added.) "Leased auto" is defined as any auto subject to a lease agreement, including any replacement autos. The Lessor Endorse-

---

4. The Lessor Endorsement provides:
   **A. Coverage**
   1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow. For a covered "auto" that is a "leased auto" Who Is An Insured is changed to include as an "insured" the lessor named in the Schedule.

2. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever comes first.
(R. at 81.)

ment additionally states who is covered—the lessor described in the Schedule—and the duration of the coverage—until the expiration date shown in the Schedule or when the lessor takes possession of the auto. We find this language clear and unambiguous. Based on this language, Robinson would have been covered first while driving the 1998 Mustang and next while driving the 1997 Dodge. In order to clarify, we trace the coverage that would have been provided had the endorsement not been deleted.

The 1995 Chevy was subject to a lease agreement whereby Rovan was required to provide direct primary insurance for Robinson as the lessor. To this end, the Lessor Endorsement was added, the 1995 Chevy was described in the Schedule of "Autos you own" (R. at 66), and Robinson was named in the Schedule as an "Additional Insured—Lessor." (R. at 67.) There is no question the 1995 Chevy and Robinson as the lessor were covered at this time.

On March 25, 1998, the Agency sent a letter to Westfield asking that the 1998 Mustang be added to the auto Schedule and that the 1995 Chevy be deleted. At this point, the 1998 Mustang became a "leased auto" specifically described in the Schedule. Rovan characterizes the 1998 Mustang as a "replacement" for the 1995 Chevy. While one could consider the 1998 Mustang a replacement for the 1995 Chevy, we do not believe Rovan need resort to that part of the "leased auto" definition. The 1998 Mustang was covered under the Lessor Endorsement even if it were not a replacement because it independently met the requirements for coverage. The 1998 Mustang was an "auto" described in the Schedule and leased to Rovan under a leasing agreement that required Rovan to provide direct primary insurance for Robinson and Robinson was the named lessor in the Schedule.

Three months later, Robinson sold the 1998 Mustang and purchased the 1997 Dodge. The 1997 Dodge, unlike the Mustang, was never described in the Schedule but it did "replace" the 1998 Mustang, which was described. The Lessor Endorsement does not define the term "replacement" and no one argues the word has a meaning beyond that used in common parlance. As such, the 1997 Dodge must be considered a replacement for the 1998 Mustang as it took the place of or replaced the Mustang. Assuming that the 1997 Dodge was subject to a lease agreement between Rovan and Robinson, *see infra* Part B, it too would have been covered by the endorsement as a replacement for the 1998 Mustang.

Contrary to Westfield's assertion that the Lessor Endorsement is vehicle specific, the endorsement, based on its plain language, is specific to the lessor named in the Schedule covering *any* auto included in the Schedule and subject to a lease agreement. The language of the Lessor Endorsement indicates that coverage beyond the original specifically included vehicle was both envisioned and anticipated. The endorsement covered "*any* 'leased auto'." (R. at 81) (emphasis supplied.) We find that had Westfield not deleted the Lessor Endorsement, it would have covered Robinson while driving the 1998 Mustang as a leased vehicle described in the Schedule and the 1997 Dodge as a replacement for that vehicle.

### 2. *Deletion of Lessor Endorsement*

Under the terms of both the Lessor Endorsement and the Policy, Westfield was contractually required to provide notice of any cancellation of coverage. Westfield offers several arguments that notice of cancellation was not required or alternatively that it provided notice in satisfaction of its obligation. First, Westfield argues no notice of cancellation was required because (a) the Amended Common Policy Declaration did not cancel the Policy but merely modified it, and (b) even if it were a cancellation, it was executed at the request of Rovan and therefore notice was not required. Second, Westfield argues it satisfied any cancellation notice requirement because the Amended Common Poli-

cy Declaration sent to the Agency clearly states form CA2001 07/97 was deleted and the sentences " * *This endorsement changes you policy. Please attach it to you original policy* * " were printed at the bottom of the page. It argues since neither the Policy nor Indiana Statute mandates a form of notice, the Amended Common Policy Declaration alone satisfies the notice requirement.

■ Westfield first argues the amendment to the Policy was merely a modification of the Policy and not a cancellation. We disagree. The deletion of the endorsement effectively canceled covered available to Robinson. Cancellation does not occur only when an entire policy is canceled; instead, cancellation occurs whenever a policy provision is amended or deleted so as to discontinue coverage previously available. *Plumlee v. Monroe Guaranty Ins. Co.*, 655 N.E.2d 350, 355 (Ind.Ct.App.1995) (characterizing the removal of a vehicle from policy coverage as a cancellation).

Westfield next argues if a cancellation did in fact take place it was initiated by Rovan based on Rovan's request for deletion of the 1995 Chevy. This argument presupposes the request for deletion of the 1995 Chevy necessarily included a request for deletion of the Lessor Endorsement, as the endorsement was vehicle specific. Since we find the Lessor Endorsement is not vehicle specific, Rovan's request to delete the 1995 Chevy did not automatically delete the endorsement. Therefore, the deletion of the Lessor Endorsement was unilateral and the Amended Common Policy Declaration did in fact cancel coverage available to Robinson.

■ As the deletion of the Lessor Endorsement was a cancellation, Westfield was required to provide notice under both the Lessor Endorsement and the Policy. Westfield advances several arguments that it satisfied the notice requirement. All of its arguments, however, start with the premise that notice by way of the Amended Common Policy Declaration is sufficient so as to alone satisfy any notice of cancellation requirements. It is not.

■ The question of what and how much notice of cancellation by the insurer is sufficient to effectively cancel an insurance policy is one of first impression for this court. While generally in the absence of a specific statutory or policy provision, any form of notice of cancellation is sufficient, 2 Lee R. Russ & Thomas F. Segalia, *Couch on Insurance* § 32.9, at 32–15 (3d ed.1995), we hold such notice must positively and unequivocally inform the insured of the insurer's intention that the policy cease to be binding. *Id.;* 43 Am. Jur.2d *Insurance* § 388 (1982). In this regard, we agree with the Supreme Court of Appeals of West Virginia, which held:

A notice of cancellation of insurance must be clear, definite and certain. While it is not necessary that the notice be in any particular form, it must contain such a clear expression of intent to cancel the policy that the intent to cancel would be apparent to the ordinary person. All ambiguities in the notice will be resolved in favor of the insured.

*Conn v. Motorist Mut. Ins. Co.*, 190 W.Va. 553, 439 S.E.2d 418, 421–22 (1993) (quoting the Syllabus of *Staley v. Municipal Mut. Ins. Co. of W. Va.*, 168 W.Va. 84, 282 S.E.2d 56, 56 (1981)).

In this case, no form of notice of cancellation is required by either Policy provision[5] or statute.[6] Therefore, Westfield

5. The "Common Policy Conditions" which governs "All Coverage Parts" (R. at 28) of the Policy define and impose on the parties specific contractual obligations in the event of cancellation. The Policy provides if Westfield cancels for reasons other than Rovan's failure to pay the premium, it must mail or deliver notice of such cancellation at least thirty days before the effective date of cancellation. Additionally, the Lessor Endorsement provides if either Westfield or Rovan were to cancel the Lessor Endorsement, Westfield would mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

6. Ind.Code § 27–1–31–1 to –3 covers the Policy as it governs the "Cancellation and Nonre-

was required to sent Rovan only such notice as would positively and unequivocally inform Rovan that Westfield was canceling the Lessor Endorsement. Westfield argues the Amended Common Policy Declaration was sufficient. It reads in relevant part:

AUTO COVERAGE PART ENDORSEMENT

1. DELETED AUTO 002—98

2. ADDED AUTO 002—98

   STATE IS INDIANA

   TERRITORY IS 033

   —ZIP CODE IS 46580

   —SERIAL NUMBER IS IFAFP42X0WF 139712

   —TYPE VEHICLE IS PRIVATE PASSENGER

   —CLASS CODE IS 739171

   —LIABILITY—COMBINED SINGLE LIMIT IS $1,000,000

   —MEDICAL PAYMENTS LIMIT IS $5,000

   —UNINSURED MOTORISTS— COMBINED SINGLE LIMIT IS $1,000,000 WITH NO DEDUCTIBLE

   —UNDERINSURED MOTORISTS—COMBINED SINGLE LIMIT IS $1,000,000

   —COMPREHENSIVE DEDUCTIBLE IS $250

   —COLLISION DEDUCTIBLE IS $500

FORMS CHANGES

1. DELETED FORM CA2001 07/97

   * * This endorsement changes your policy. Please attach it to your original policy.* *

newal of Commercial Property and Casualty Insurance." Chapter 31 does not mandate any particular form of cancellation notice. We note that contrary to Rovan's suggestion, Ind.Code § 27–7–6–1 to –12 (Cancellation of

(R. at 112.) Westfield argues the statement at the bottom deleting Form CA2001 07/97 (the Lessor Endorsement) in conjunction with the sentences recognizing the Amended Common Policy Declaration as a change in the policy is sufficient to provide notice of cancellation. We disagree and find the phrase "DELETED FORM CA2001 07/97" decidedly cryptic and completely uninformative. All it expresses is that one out of some forty-two forms contained in the Policy had been deleted. It does not suggest the importance or practical consequences of this deletion by positively and unequivocally informing Rovan that the Lessor Endorsement would cease to be binding. In other words, it is not a clear expression of intent to cancel so as to be apparent to the ordinary person.

We are not persuaded by Westfield's suggesting that "[a]nyone who looked at the Policy could easily correlate the form number with the title of the form." (Reply Br. of Appellant at 4.) The Policy is well over one hundred pages long and contains roughly forty-two separately numbered "forms" of various page lengths. The several tables of contents list the parts of the Policy by description, not by form number. The only way for one to determine which form had been deleted would be to examine each and every page of the Policy. In this case, the search would have uncovered the Lessor Endorsement approximately three-quarters of the way through the Policy located immediately after the "Nuclear Energy Liability Exclusion Endorsement." (R. at 80.)

Westfield, by failing to provide notice of cancellation, did not effectively cancel coverage under the Lessor Endorsement. Accordingly, the Lessor Endorsement remained in effect on June 12, 1998, the date of the accident.

Automobile Insurance Policies) does not apply to the Policy as it applies only to automobile policies issued to and insuring natural persons. Rovan is not a natural person.

## B. *Genuine Issues of Material Fact*

Westfield argues summary judgment for Rovan was inappropriate because a genuine issue of material fact exists as to whether the 1997 Dodge involved in the accident was a "leased vehicle."[7] On appeal from a grant of summary judgment, the burden is on the appellant to prove the trial court erred in determining there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 813 (Ind.Ct.App.1995). "The trial court's grant of summary judgment is clothed with a presumption of validity and the appellant bears the burden of proving that the trial court erred." *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 936 (Ind.Ct.App.1996) (quoting *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993)); *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). Although the nonmovant has the burden of demonstrating error, "[w]e view the pleadings, depositions, answers to interrogatories and affidavits in the light most favorable to the non-moving party." *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind.1991). We should note that while the trial court found that the 1997 Dodge was a "leased auto" under the terms of the Lessor Endorsement, (R. at 725), we are not bound by such special findings. *Weber v. Costin*, 654 N.E.2d 1130, 1133 (Ind.Ct.App.1995) ("Special findings are not required in summary judgment proceedings and are not binding on appeal.").

In this case, evidence of a lease was provided by the affidavits of Robinson, Cheryl Robinson, and Don Stoneburner, an account executive at the Agency. Each acknowledged an oral lease existed with respect to the 1997 Dodge prior to the accident. Robinson stated:

4. That on or about June 8, 1998 (prior to the date of the accident which is at issue in this cause), I sold the aforementioned Ford Mustang and became the owner of a 1997 Dodge pickup truck. At that time, I orally agreed with Rovan to replace the Ford Mustang with the Dodge pickup truck pursuant to the same terms and conditions as contained in the initial lease agreement.

5. That pursuant to my lease agreement with Rovan, Rovan was required to provide direct primary liability insurance for me while operating the Dodge pickup truck.

(R. at 297.) In her affidavit, Cheryl Robinson stated:

7. That on or about June 8, 1998 . . . Rovan consented to Robinson's sale of the 1998 Ford Mustang and purchase of a 1997 Dodge Ram pickup truck. On the same date, Rovan and Robinson orally agreed that the leased Ford Mustang would be replaced with the Dodge pickup under the same terms and conditions as the prior lease agreements pertaining to the Chevy pickup truck and the Ford Mustang. On or about the same date, I notified Yaste, Zent & Rye that Rovan had replaced the leased Ford Mustang with the Dodge pickup truck. . . . I requested that the Ford Mustang be replaced with the Dodge pickup truck under Rovan's insurance policy.

(R. at 290–91.) In his affidavit, Stoneburner stated:

---

7. Westfield does not argue an oral lease would not satisfy the definition of a "leased auto" under the Lessor Endorsement. It only questions the existence of the oral lease. Additionally, we note that Westfield argues a factual issue exists as to whether Rovan and Robinson received the Amended Common Policy Declaration from the Agency. As we find the Amended Common Policy Declaration was insufficient to provide notice of cancellation, we do not address the issue of whether Rovan or Robinson actually received it.

7. That on June 8, 1998, Cheryl Robinson contacted me indicating that Rovan and Brandon Robinson had agreed to replace the Mustang with a 1997 Dodge pickup truck. She requested that the Rovan policy be amended to reflect the replacement of the Mustang with the leased Dodge pickup truck.

(R. at 584.)

Westfield does not produce any evidence to suggest a lease did not exist. Instead, it merely characterizes the affidavits presented by Rovan as "self-serving." (Br. of Appellant at 22.) It points out that the lease with respect to the 1997 Dodge was oral whereas the previous two leases had ben in writing. This alone does not create an issue of fact so as to render summary judgment improper. When a motion for summary judgment is made and supported with the materials contemplated by T.R. 56, the opposing party may not rest on its pleadings but must set forth specific facts using supporting materials contemplated by this rule. *Rickels v. Herr*, 638 N.E.2d 1280, 1282 (Ind.Ct.App. 1994). "If the opposing party fails to meet this burden, then summary judgment may be granted." *Id.* Westfield failed to meet its burden, as it did not produce evidence sufficient to create a genuine issue of material fact. Therefore, summary judgment for Rovan was appropriate.

### CONCLUSION

Had Westfield not deleted the Lessor Endorsement, Robinson would have been covered under the Policy while driving the 1997 Dodge at the time of the accident. The deletion of the Lessor Endorsement was a unilateral cancellation of which Westfield was required to give notice to Rovan. Westfield failed to provide such notice of cancellation as the Amended Common Policy Declaration did not positively and unequivocally inform Rovan that coverage under the Lessor Endorsement was being terminated. No genuine issues of material fact pertaining to the Policy or

its coverage exist. Summary judgment in favor of Rovan was therefore appropriate.

Affirmed.

SHARPNACK, C.J., and BAKER, J., concur.