**INDIANA INSURANCE COMPANY,**
Appellant,

v.

**Patricia S. DREIMAN, James J. Dreiman, Benjamin Dreiman, and Regent Insurance Company, Appellees.**

No. 42A01–0305–CV–174.

Court of Appeals of Indiana.

March 11, 2004.

Lawrence M. Hansen, Thomas R. Harper, Skiles, Hansen, Cook & DeTrude, Indianapolis, IN, Attorneys for Appellant.

John T. Hume III, Hume Smith Geddes Green & Simmons, Indianapolis, IN, Matt Parmenter, Sturm Smith & Parmenter, Vincennes, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Indiana Insurance Company ("Indiana Insurance") appeals the trial court's entry of summary judgment in favor of James Dreiman, Patricia Dreiman (collectively "the Dreimans"), and their grandson Benjamin Dreiman on their claim for declaratory relief. Indiana Insurance presents several issues for our review. We address a single dispositive issue, namely, whether the trial court erred when it construed the term "premises" to include a public roadway.

We reverse.[1]

### FACTS AND PROCEDURAL HISTORY

The Dreimans own a farm located on 110 acres in Knox County. James' brother

---

1. We deny Indiana Insurance's request for oral argument.

Robert owns a farm located on 135 acres adjacent to the Dreimans' farm. James and Robert jointly farm both properties as a single farming operation. County Road 957 South, also known as Black Road, runs in between the two farms. The only way to get from one farm to the other is by crossing Black Road.

The Dreimans have a farm liability insurance policy with Indiana Insurance ("the policy"). An endorsement to the policy provides that Robert and his wife are "additional insureds," and it lists Robert's farm as "designated premises" for the purpose of liability coverage. James and Roberts' S corporation, Diamond D Corporation, is also named as an "additional insured."

On October 5, 1997, eleven-year-old Benjamin was driving the Dreimans' dirt bike with his friend Jacob Clark riding as a passenger. The dirt bike was not licensed for use on public roads; it was used on the two farms for farm-related work and recreation.[2] Nonetheless, Benjamin was driving on Black Road to get from one farm to the other when he collided with a vehicle driven by Jennifer Purdue. Benjamin was engaged in recreation, and not farm work, at the time. As a result of the collision, Clark sustained injuries, and he subsequently filed suit against Purdue, Benjamin, and the Dreimans. Clark alleged in relevant part that Benjamin was negligent in the operation of the dirt bike and that the Dreimans were negligent "in providing" the bike to Benjamin.

On May 22, 2000, the Dreimans filed a complaint for declaratory judgment alleging that Indiana Insurance was required under the policy to defend and indemnify them in Clark's suit. On November 7, 2002, Indiana Insurance moved for summary judgment alleging that the Dreimans' policy did not provide coverage for the accident. The Dreimans filed a cross-motion for summary judgment alleging that they were entitled to coverage under the policy. Following a hearing, the trial court entered summary judgment in favor of the Dreimans and ordered Indiana Insurance to defend and indemnify them. This appeal ensued.

## DISCUSSION AND DECISION

When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.,* 727 N.E.2d 466, 469 (Ind.Ct. App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Jesse v. American Cmty. Mut. Ins. Co.,* 725 N.E.2d 420, 423 (Ind.Ct. App.2000), *trans. denied.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co., Inc.* 727 N.E.2d 790, 792 (Ind.Ct.App.2000).

We note that the trial court made findings and conclusions in support of its entry of summary judgment. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *See Ledbetter v. Ball Mem'l Hosp.,* 724

---

**2.** In his deposition, Benjamin testified that, about once a week, he drives the dirt bike on Black Road to visit a neighbor's property located approximately one-half mile from the Dreimans' farm.

N.E.2d 1113, 1116 (Ind.Ct.App.2000), *trans. denied.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

Construction of the terms of a written contract is a pure question of law for the court, and we conduct a de novo review of the trial court's conclusions in that regard. *Grandview Lot Owner's Ass'n, Inc. v. Harmon,* 754 N.E.2d 554, 557 (Ind.Ct.App.2001). When interpreting an insurance policy we give plain and ordinary meaning to language that is clear and unambiguous. *Westfield Companies v. Rovan, Inc.,* 722 N.E.2d 851, 855 (Ind.Ct.App. 2000). Policy language is unambiguous if reasonable persons could not honestly differ as to its meaning. *Id.* at 856. To that end, we look to see if policy language is susceptible to more than one interpretation. *Id.* Ambiguous provisions are to be construed in favor of the insured, particularly provisions that limit or exclude coverage. *Associated Aviation Underwriters v. George Koch Sons, Inc.,* 712 N.E.2d 1071, 1076 (Ind.Ct.App.1999). Finally, the terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms. *Niccum v. Niccum,* 734 N.E.2d 637, 639 (Ind.Ct.App.2000).

The policy provides in relevant part as follows:

[Section II(1)(b)] This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

\* \* \*

2. Exclusions

This insurance *does not apply* to:

\* \* \*

h. "Bodily injury" or "property damage" arising out of the ownership, maintenance, *use or entrustment to others* of any aircraft, *"motor vehicle,"* or *"recreational vehicle"* owned or operated by or rented or loaned to any "insured." Use includes operation and "loading or unloading."

This exclusion does not apply to:

\* \* \*

(3) A "motor vehicle" not subject to motor vehicle registration by reason of:

(a) Its use exclusively at the "insured location;"

(b) Its being kept in dead storage at the "insured location;" or

(c) Its exclusive use as a device for assisting the handicapped.

(4) A licensed recreational "motor vehicle" owned by an "insured," provided the "occurrence" takes place on the "insured location."

(Emphases added). Thus, under the motor vehicle exclusion, there is *no* coverage where bodily injury results from the use of a motor vehicle or recreational vehicle, subject to the delineated exceptions to the exclusion.

The policy defines "motor vehicle" in relevant part as "(1) A motorized land vehicle . . . (a) Designed for travel on public roads; or (b) Used on public roads . . . . [or] (3) A motorized golf cart, snowmobile or other motorized land vehicle owned by an 'insured' and designed for recreational use off public roads, *while off*

an 'insured location[.]' " [3] (Emphasis added). The policy defines "insured location" in relevant part as: "(a) The farm premises (including grounds and private approaches) and 'residence premises' shown in the Declarations; ... [and] (c) Premises used by you *in conjunction with* the [farm and residence] premises[.]" (Emphasis added). The policy does not define the term "premises."

The trial court found in relevant part as follows:

9. The collision in question occurred on a portion of County Road 957 South which was constantly *used in conjunction with* the farming on these two farms.

* * *

18. The dirt bike was designed for recreational use ... [and was not] registered for use on public roads.

* * *

26. The Court finds that portion of *County Road 975 South being used by Benjamin Dreiman at the time of the collision was a part of the "insured location" under the policy since it is premises (a tract of land)* used by the insureds, James and Patricia and the additional insureds, Robert and Vickie Dreiman and Diamond D Corporation in

conjunction with the premises shown in the policy endorsement.

27. The Court finds that *the dirt bike is a motorized land vehicle;* that it was owned by James Dreiman who is an insured under the policy; that the motor bike was designed for recreational use off public roads and that it was being used at the time of this collision *on (not off) the "insured location."*

(Emphases added). Because the motor vehicle exclusion applies to accidents involving "motorized land vehicles ... *while off an 'insured location,'* " the trial court found that the exclusion does *not* apply here. Thus, the trial court concluded in relevant part that Indiana Insurance has a duty to defend and indemnify the Dreimans under the terms of the policy.

On appeal, Indiana Insurance contends that the motor vehicle exclusion applies because the accident occurred on a public roadway, which is not included in the definition of "insured location" under the policy. We must agree.

Again, the policy defines "insured location" in relevant part as the "farm premises (including grounds and private approaches) and 'residence premises' ... [and][p]remises used by you in conjunction with the [farm and residence] premises[.]" Because the policy does not define the term "premises," and because the parties disagree regarding whether that term en-

---

3. Both the parties and the trial court assume that the policy does not define "recreational vehicle" as that term is used in the motor vehicle exclusion. As such, they rely on the definition of "motor vehicle." But the policy defines "recreational motor vehicle" as "any motorized vehicle designed for recreation, which is principally used off public roads and not licensed for road use." That definition appears in Section I of the policy, regarding property losses, but there is no corresponding definition in Section II, regarding liability. We construe an insurance policy as a whole. *American Family Ins. Co. v. Globe Am. Cas.*

*Co.*, 774 N.E.2d 932, 935 (Ind.Ct.App.2002). We see no reason not to apply the definition from Section I to the provisions found in Section II. Thus, the trial court erred when it found that the policy does not define "recreational vehicle." On appeal, neither party disputes the applicability of the "motor vehicle" definition to the dirt bike. We note that the motor vehicle exclusion applies to "recreational vehicle[s]," and none of the exceptions to the exclusion seem to apply under the facts presented here. Indeed, the Dreimans do not argue on appeal that any of the exceptions to the exclusion apply.

compasses the public roadway running through the Dreimans' farming operation, we must construe the meaning of that critical term.

The term "premises" is unambiguous. Thus, we look to its plain and ordinary meaning. *See Westfield Cos.*, 722 N.E.2d at 855. Black's Law Dictionary defines "premises" in relevant part as "[a] house or building, along with its grounds[.]" BLACK'S LAW DICTIONARY 1199 (7th ed.1999). And the American Heritage Dictionary of the English Language defines "premises" in relevant part as "[l]and and the buildings on it." THE AMERICAN HERITAGE DICTIONARY 1429 (3d ed.1992). Those definitions are consistent with the use of the term throughout the policy. The references to "premises" include related references to "structures and grounds," places "rented," and places where an insured temporarily "resid[es]." Neither the definitions nor the context of the policy supports a determination that a public roadway constitutes *"premises* used in conjunction" with the Dreimans' farming operation.

The Court of Appeals of Arizona has construed an almost identical policy provision and held that public roadways cannot be considered "premises" used "in connection with" covered premises. *See Hudnell v. Allstate Ins. Co.*, 190 Ariz. 52, 945 P.2d 363 (App.1997). The policy at issue in *Hudnell* excluded coverage for bodily injury due to the use of motor vehicles, but an exception to that exclusion provided coverage for injuries due to the use of recreational motor vehicles *on* the insured premises. The policy defined "insured premises" in relevant part as "any premises used by an insured person in connection with the residence premises." *Id.* at 365. And the policy defined "residence premises" as "the *dwelling,* other structures and land located at the address stated on the

Policy Declarations." *Id.* (emphasis original).

The plaintiff in *Hudnell* was injured when his vehicle collided with a dirt bike that the homeowner was "test driving" on a public road after making repairs in his driveway. The trial court found that the homeowner used the public road as "part of his repair activity[,]" and, thus, the road was used "in connection with" the insured premises. *Id.* at 366. On appeal, the court noted that "[t]he purpose of a vehicle exclusion in a homeowner's policy is to require the insured to obtain specific liability insurance on motor vehicles except under the limited exceptions enumerated in the policy." *Id.* Further, the court noted that the exception to the exclusion at issue was limited to motor vehicles "designed principally for recreational use *off public roads.*" *Id.* at 367 (emphasis added). Thus, the court stated "[t]o hold, as the trial court did, that 'insured premises' includes public roads when the policy specifically limits coverage to vehicles *not intended for use on public roads* renders the exception meaningless." *Id.* (emphasis added).

We adopt that reasoning here, where the policy likewise includes an exception to the motor vehicle exclusion for injuries stemming from use of a "licensed recreational 'motor vehicle,'" defined as a motorized vehicle "designed for recreation" and "principally used *off public roads* and not licensed for road use," provided "the 'occurrence' takes place on the 'insured location.'" (Emphasis added).

The general principles of premises liability also provide useful guidance. Specifically, "[t]he thread through the law imposing liability upon occupancy of premises is control." *Harris v. Traini,* 759 N.E.2d 215, 225 (Ind.Ct.App.2001) (quoting *Great Atl. & Pac. Tea Co. v. Wilson,* 408 N.E.2d 144, 150 (Ind.Ct.App.1980)). "[O]nly the

party who controls the land can remedy the hazardous conditions which exist upon it and only the party who controls the land has the right to prevent others from coming onto it. Thus, the party in control of the land has the exclusive ability to prevent injury from occurring." *Id.* (quoting *City of Bloomington v. Kuruzovich*, 517 N.E.2d 408, 411 (Ind.Ct.App.1987), *trans. denied*). Clearly, the Dreimans do not exercise control over the county road. As such, there would be no reason to include the road in their farm liability insurance coverage.

In sum, the motor vehicle exclusion applies to injuries arising from the use of "motorized land vehicles" *off* of the "insured location," which includes "premises" used in conjunction with the farm. The plain and ordinary meaning of the term "premises" does not encompass a public roadway. As such, the accident on Black Road did not occur on the insured location, and the motor vehicle exclusion under the Dreimans' policy applies. We reverse the trial court's entry of summary judgment in favor of the Dreimans, and we hold that Indiana Insurance is entitled to summary judgment in this declaratory judgment action as a matter of law.

Reversed.

BAKER, J., and MAY, J., concur.